**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

JAMES URBAN,

                Plaintiff,

vs.

JOHN SELLS, et al.,

                Defendants.

No. C14-4025-MWB

**MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING INITIAL REVIEW OF COMPLAINT**

---

**TABLE OF CONTENTS**

**I.**   **INTRODUCTION AND BACKGROUND**.............................................. 2
    **A.**    *Urban 1*.................................................................................. 5
    **B.**    *Urban II*................................................................................. 9
    **C.**    *Urban III*.............................................................................. 11
    **D.**    *Urban IV* ............................................................................. 13
    **E.**    *Urban V* .............................................................................. 13
    **F.**    *Urban's Current Lawsuit*.................................................... 15

**II.**   **LEGAL ANALYSIS** ................................................................... 16
    **A.**    *Review Of A Report And Recommendation*............................ 16
    **B.**    *Urban's Objections* ............................................................. 19
    **C.**    *Appropriate sanctions*......................................................... 24

**III.**  **CONCLUSION** .......................................................................... 27

Plaintiff James Urban's pro se complaint is before me pursuant to a Report and Recommendation of United States Magistrate Judge Leonard T. Strand recommending that Urban's complaint be dismissed on a number of grounds and that sanctions, in the amount of $1,000, be imposed on Urban for filing his frivolous, repetitive, and abusive complaint after being warned previously against the further filing of such complaints. Urban has filed objections to the Report and Recommendation. I now consider whether to accept, reject, or modify Judge Strand's Report and Recommendation in light of Urban's objections.

## I.    INTRODUCTION AND BACKGROUND

This is the sixth federal lawsuit Urban has filed in this court alleging constitutional rights violations in connection with his state court prosecution and conviction for unlawful possession of animal furs in 2008. In that prosecution, Urban was charged with trapping without a license, fourth offense, in violation of Iowa Code §§ 481A.135 and 483A.1, and unlawful possession of animal furs, fourth offense, in violation of Iowa Code §§ 481A.38 and 481A.135. *See State v. Urban*, 776 N.W.2d 110, 2009 WL 2392085, at *1 (Iowa Ct. App. Aug. 6, 2009) (unpublished table decision). The Iowa Court of Appeals provided the following factual background:

> Conservation officers from the Iowa Department of Natural Resources were suspicious that James Urban (Urban) was trapping animals without a license. The trapping of fur-bearing animals requires a fur harvester license under Iowa Code section 483A.1 (2007). In December 2006 officers followed Urban while he stopped on a seldom-used dirt road. After Urban left, officers went to the same area and found a raccoon in a snare. The name on the snare was Travis Urban (Travis), Urban's son.
>
> Officers obtained a search warrant for Urban's home, which they executed on January 20, 2007. Urban was the only

person at the residence at the time of the search warrant. Officers found hundreds of traps and snares, trapping lures, and bait. They also found forty dead raccoons and one dead badger.FN1 Some of the traps and snares had Urban's name on them, and some had Travis's name on them. A container with parts for snares was found in the same room as Urban. On the kitchen countertop was a trap tag with Travis's name, a lock for a snare, some change, a comb, and Urban's work ID card.

The officers found an envelope addressed to Urban from W & R Furs, a fur dealer from Fairmont, Minnesota. There was a receipt dated December 23, 2006, with Travis's name on the top, but with the notation on the bottom, "Jim Forgot envelope so here is 250 will pay rest next Sat."

*Id.*

Following a jury trial, Urban was found not guilty of trapping animals without a valid license, but guilty of unlawful possession of animal furs. *Id.* Urban moved for a new trial, contending that the jury's verdict was not supported by the evidence. The Iowa state district court denied Urban's motion for new trial and sentenced him to 365 days in jail, with all but 120 days suspended. He was placed on probation for a period of two years and was suspended from having a trapping license for five years. Urban appealed his conviction.

On appeal, Urban contended that there was insufficient evidence to show he illegally possessed fur-bearing animals. He argued that he did not have exclusive possession over the animal furs because his son, Travis, was using Urban's garage for storing his furs and trapping supplies. Urban also argued that the state failed to prove that he had constructive possession of the animal furs. *Id.,* 776 N.W.2d 110, 2009 WL 2392085, at *2. Urban also contended that he received ineffective assistance because his trial counsel failed to file a motion to adjudicate law points to determine what license is required to possess furs. He claimed that there is no specific Iowa license he could obtain

3

to possess furs. *Id.,* 776 N.W.2d 110, 2009 WL 2392085, at \*3. Urban's conviction was affirmed by the Iowa Court of Appeals. *Id.,* 776 N.W.2d 110, 2009 WL 2392085, at \*3. The court of appeals rejected Urban's sufficiency of the evidence claim, concluding:

> If the jury determined Urban was living in his home alone, it could find he was in actual possession of the furs. There was contradictory evidence as to whether Travis was living in the same home as Urban. The jury was free to reject certain evidence and credit other evidence. State v. Anderson, 517 N.W.2d 208, 211 (Iowa 1994). The jury could have rejected Travis's testimony that he was living with his father, and that the raccoons belonged to him.
>
> On the other hand, even if the jury found Urban and Travis had joint possession of the premises, there was sufficient evidence in the record to show Urban had constructive possession of the animal furs. There was no evidence the animal furs were hidden, and it is clear Urban would have knowledge of over forty dead animal pelts in his garage. Furthermore, the envelope from W & R Furs addressed to Urban and Urban's telephone call to Anderson about picking up furs, shows his authority and right to maintain control over the animal furs. We conclude there is substantial evidence in the record to show Urban had constructive possession of the animal furs.

Id., 776 N.W.2d 110, 2009 WL 2392085, at \*2.

The court went on to reject Urban's claim of ineffective assistance of counsel, observing that:

> Under the Iowa statutory scheme, a person may not possess the fur of a fur-bearing animal taken from the wild, such as a raccoon or badger, without a license. See Iowa Code §§ 481A.38, 483A.1. The only licenses that pertain to the possession of animal furs are the fur harvester license and the fur dealer license. It therefore follows that a person must

> have one of these licenses in order to possess the fur of a fur-bearing animal. Urban did not have either type of license.

. *Id.*, 776 N.W.2d 110, 2009 WL 2392085, at *3.

Two years after his conviction was affirmed, Urban filed the first of his six lawsuits in this district. A review of those cases follows.

### A.     *Urban 1*

On August 1, 2011, Urban filed *Urban v. Iowa Dep't of Natural Resources*, C11-4068-PAZ ("Urban I"). In *Urban I*, Urban brought claims against the Iowa Department of Natural Resources ("DNR") and two of its employees, John Sells and Chad Morrow, for "misusing Iowa laws" concerning the possession of animal furs without a license.[1] On September 27, 2011, defendants filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) "because it fails to plead any cause of action that invokes federal jurisdiction" and Rule 12(b)(6) because it "fails to state a claim against any defendant upon which relief could be granted." *Urban I*, Defendants' Mot. To Dismiss at ¶¶ 2-3.

---

[1]In his complaint, Urban specifically alleged the following:

> I'm sueing (sic) John Sells and Chad Morrow and the Department of Natural Resources for misusing Iowa laws. They say a person may not posses (sic) the fur of a fur-bearing animal taken from the wild, such as a raccoon or badger, without a license.

> There is no license to possess fur-bearing animals.

> Here in Iowa we do [not] have laws that says (sic) a person cannot poach animals or have possession of poached animals.

*Urban I*, Complaint at 2.

On November 15, 2011, Urban filed an amendment to his complaint in which he asserted the following:

> I'm sueing (sic) the Dept. of Natural Resources and Chad Morrow and John Sells while acting in their officiall (sic) capacity or under color of legal authority for an agency of the United States.
>
> For being put in jail twice in the same case over Christmas holidays [f]or a period of 8 ½ months in jail while misusing (sic) Iowa laws.
>
> There is no license to posses (sic) furbearing (sic) animals that are lawfully taken.
>
> I'm also sueing (sic) the DNR for giving out $8,000 dollar fines for furbearing (sic) animals that were lawfully taken. I believe the DNR knows the only time a person is given a fine like this, is when a furbearing (sic) animal has been poached or if a person is possessing poached animals.
>
> I'm also sueing (sic) them for suspending all DNR licenses because of the $8,000 dollar fine, or for suspending my trapping license for a longer period while misusing these laws.
>
> I'm also sueing (sic) them for keeping property that was seized out of the house while misusing these laws.
>
> I'm also sueing (sic) them for the $5,000 plus for work release and $2,500 for appeal bond and $650 to bond out of jail while misusing Iowa laws.
>
> Basic of Jurisdiction
> U.S. Government Defendant
>
> Cause of Action
> 28 U.S.C. § 95
> Misusing Iowa laws

A lawsuit can be brought up in the District and Division in which the defendent (sic) resides or a part of the event or

omission giving rise to the claim occurred or a substantial part of the property that is the subject of the action is situated.

After reviewing what has all happen (sic) I'm asking for damages of $400,000.

*Urban I*, Amended Comp. at 2-3. In response, defendants filed a renewed motion to dismiss.

On November 28, 2011, Urban filed a second amended complaint, in which he alleged as follows:

The Plaintiff pursuant to Federal Rule of Civil Procedure 15(c)(1) and 15(c)(1)(A) and Local Rule 15.

15(c)(1)

when an Amendment relates back, an amendment to a pleading relates back to the date of the original pleading when.

15(c)(1)(A)

The law that provides the applicable statute of limitations allows relation back

Local Rule 15
Changes sought

1. A demand for a jury trial

2. I'm filing this action under 28 U.S.C. § 1395, U.S. Code, Section 1395; fine, penaltys (sic) or forfeiture.

3. Jurisdiction

A civil proceeding for the recovery of a pecuniary fine, penalty or forfeiture may be prosecuted in the district where it accrues or the defendant is found.

4. Demand

$400,000

My son, Travis was out trapping and keeping his catch in my garage. John Sells and Chad Morrow after stopping my son

7

> one day when he was out trapping and talking to him came to the house and charged me with unlawful possession.
>
> They said a person needs a trapping license to have possession of those furbearing (sic) animals my son caught.
>
> The Iowa Department of Natural Resources are missusing (sic) Ia. laws.
>
> There is no license to possess furbearing (sic) animals that are lawfully taken.
>
> Here are some of my thoughts.
>
> I would think the Iowa Dept. of Natural Resources and the Dept. of Justice would like to take this to court to show me and the people of Iowa that this law does exsist (sic).  Instead of trying to have this case dismissed.
>
> There are thousands of sportsmen in the State of Iowa that should know of this law if it exsist (sic).

*Urban I*, Second Amended Comp. at 2-3.  Again, in response, defendants filed a second renewed motion to dismiss.

On December 19, 2011, then Chief United States Magistrate Judge Zoss granted defendants' motions to dismiss and dismissed *Urban I* with prejudice, finding that Urban failed to establish federal subject matter jurisdiction and, alternatively, that the complaint failed to state a cognizable claim:

> From the facts pled, it does not appear that there is any other possible basis for jurisdiction in federal court. Accordingly, the motions to dismiss pursuant to Rule 12(b)(1) (Doc. Nos. 3, 8, and 12) are granted.
>
> In any event, the plaintiff has failed completely to allege facts "above the speculative level" to support a cognizable legal theory for a valid claim against the defendants (*Parkhurst*, 569 F.3d at 865), nor has he alleged a basis for circumventing the defendants' immunity under the Eleventh Amendment (*see Skelton v. Henry*, 390 F.3d 614,

617 (8th Cir.2004) (the Eleventh Amendment bars the award of any retroactive relief for violations of federal law that would require payment of funds from a state treasury)). For these reasons, even if this court did have jurisdiction, the complaint would be dismissed under Rule 12(b)(6).

*Urban I*, Order at 10.

On December 23, 2011, Urban filed a motion to reconsider. Judge Zoss denied that motion on December 28, 2011. On February 13, 2012, Urban filed a second motion to reconsider. Judge Zoss denied the second motion to reconsider on February 14, 2012. Urban did not appeal the dismissal of *Urban I*.

### B. Urban II

On December 14, 2011, while *Urban I* was still pending, Urban filed *Urban v. Iowa Department of Natural Resources*, C11-4107-DEO (*Urban II*). In *Urban II*, Urban again brought claims against the DNR, Sells, and Morrow, as well as Steven Griebel, Amy Oetken, Billy Oyadare, and Darin Raymond.[2] In his *Urban* II complaint, Urban alleged that:

> Count 1
>
> [the Defendants] are misusing Iowa Laws. None of these laws you charged me with applies to trapping non-game animals.
>
> There is no license to trap non-game animals. And those racoons, a accadently [sic] catch is a accadently [sic] catch.

---

[2] Urban's complaint does not describe each defendant's alleged actions in the events at issue. However, defendants' motion to dismiss explained that Griebel, like Sells and Morrow, is a DNR employee, Raymond is the Plymouth County Attorney who filed the relevant criminal charges against Urban, Oetken is the Assistant Plymouth County Attorney who prosecuted Urban, and Oyadare is an Assistant Iowa State Public Defender who represented Urban.

If the DNR would not of been shooting those fur bearing animals they could be let go.

Count 2

I'm also filing this civil suit because when a person fights the Iowa Dept. Of Natural Resources, they do not get a fair trail [sic]. A person gets convicted of laws that do not exist. . .

*Urban II*, Comp. at 3. Urban went on to explain why he felt that he did not get a fair trial.

On March 7, 2012, Urban filed an amended complaint in which he largely repeated his earlier claims. Defendants promptly filed a motion to dismiss on numerous grounds, including issue preclusion. Judge Zoss submitted a Report and Recommendation in which he recommended that defendants' motion to dismiss be granted, explaining:

It is clear that in the present lawsuit the plaintiff is attempting to again assert that the DNR and various state officials acted contrary to Iowa law when they prosecuted him for unlawful possession of furs. This question has already been decided by this court, and the plaintiff is precluded from asserting this claim in the present action. *See Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 973 (1979) ("[O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."); *Plough ex rel. Plough v. W. Des Moines Cmty. Sch. Dist.*, 70 F.3d 512, 517 (8th Cir. 1995) (claim preclusion "bars relitigation of the same claim between parties or their privies where a final judgment has been rendered upon the merits by a court of competent jurisdiction"). In any event, this claim is barred by the principles set out in of *Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S. Ct. 2364, 2372 (1994) ("[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment . . . a . . . plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state

> tribunal authorized to make such determination, or called into
> question by a federal court's issuance of a writ of habeas
> corpus[.]").
>
> To the extent the plaintiff also is attempting to assert
> an attorney malpractice case against the defendant Oyadare,
> he has asserted no basis for this court's jurisdiction, and it
> appears to the court that there is none.

*Urban II*, Report and Recommendation at 2-3.

On November 27, 2012, Judge Donald E. O'Brien adopted Judge Zoss's Report and Recommendation and granted defendants' motion to dismiss. Judge O'Brien concluded that Urban's claims were barred by the doctrines of issue and claim preclusion because Urban was attempting to re-litigate issues decided against him in *Urban I* and that his claims against defendants Raymond and Oetken were barred by absolute prosecutorial immunity. *Urban II*, Order Adopting Report and Recommendation at 6-7. Urban did not appeal the dismissal of *Urban II*.

### C. *Urban III*

On August 1, 2012, while *Urban II* was still pending, Urban filed his third lawsuit in this court, *Urban v. John Sells*, C12-4075-DEO (*Urban III*). In *Urban III*, Urban again alleged that his constitutional rights were violated as a result of his prosecution and conviction for unlawful possession of animal furs. Urban again brought claims against Sells, Morrow, Oetken, and Raymond. In addition, Urban sued four Iowa state court judges, Iowa District Court Judge James Scott, who presided over Urban's criminal jury trial, and Iowa Court of Appeals Judges Gayle Nelson Vogel, Anuradha Vaitheswaran, and Senior Judge James L. Beeghly, the members of the panel who affirmed Urban's conviction on appeal. In response, defendants filed motions to dismiss in which they argued that the complaint should be dismissed for lack of subject matter jurisdiction,

pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Urban resisted defendants' motions to dismiss and sought leave to amend his complaint, which was granted.[3]

On January 23, 2013, Urban filed his amended complaint which was largely a rehash of his earlier claims, supplemented with a newspaper report of his conviction and references to legal authorities. Defendants promptly moved to dismiss the amended complaint on the same grounds previously argued.

On September 5, 2013, Judge O'Brien granted the defendants' motions to dismiss, observing:

> Because the Court is persuaded that Mr. Urban's claims must be dismissed based on judicial immunity, prosecutorial immunity, and a lack of subject matter jurisdiction, the Court need not reach the other issues included in the Defendants' briefs, including claim/issue preclusion, qualified immunity, and 11th Amendment immunity. However, the Court is aware that each of those issues have been discussed by either this Court, Judge Strand or Judge Zoss during the course of Mr. Urban's four cases, and each issue has been resolved against Mr. Urban. Accordingly, the Court notes that any future "trapping" case Mr. Urban files will have high procedural bars to overcome before it is allowed to proceed. If Mr. Urban feels that this ruling is incorrect, and he wishes to further pursue his "trapping" case, the proper procedural step

---

[3]Urban also sought to proceed *in forma pauperis* with regard to another lawsuit. On January 3, 2013, Judge Strand denied Urban's request for leave to proceed *in forma pauperis*, finding the proposed complaint to be "strikingly similar to plaintiff's proposed amended complaint in this case, naming the same eight defendants and alleging the same general facts." Urban III, Order at 1. Judge Strand cautioned Urban that if he tried to "file another separate action in this court arising from the same alleged facts at issue in [Urban III], he will face monetary sanctions." Urban III, Order at 2.

> is to file an appeal with the 8th Circuit Court of Appeals rather
> than filing another new section 1983 lawsuit before this Court.

*Urban III*, Ruling On Motions To Dismiss at 11–12 (footnote omitted).  Urban did not appeal the dismissal of *Urban III*.

### D.     Urban IV

On May 30, 2013, while *Urban* III was still pending, Urban sought to proceed *in forma pauperis* with regard to a fourth lawsuit, *Urban v. Darin Raymond*, C13-4050-DEO (*Urban IV*).  Judge Strand denied Urban's request for leave to proceed *in forma pauperis*.  In *Urban IV*, Urban again alleged that his constitutional rights were violated as a result of his prosecution and conviction for unlawful possession of animal furs. Urban brought claims against Raymond, Morrow, Griebel, and Oyadare as well as Iowa District Court Judge Jeffrey A. Neary.  Because of the addition of Judge Neary, and slightly different factual allegations, Judge Strand found it possible that *Urban IV* involved a new charge and prosecution of Urban for trapping-related activities.  Thus, Judge Strand denied Urban's motion for leave to proceed *in forma pauperis* status based on his history of filing frivolous and repetitive lawsuits, but concluded that he could proceed with *Urban IV* if he paid the required filing fee.  Urban never did, and *Urban IV* was dismissed on August 12, 2013.  Urban did not appeal the dismissal of *Urban IV*.

### E.     Urban V

A little over a month after Urban III was dismissed, on October 18, 2013, Urban filed his fifth lawsuit in this court, *Urban v. John Sells*, C13-4096-DEO (*Urban V*).  The complaint in *Urban V* largely repeats the allegations found *Urban III*'s amended complaint.  Sells, Morrow, Oetken, Raymond, Oyadare, Scott, Vogel, Vaitheswaran and Beeghly were again named as defendants.  On the same day, after reviewing the

complaint, Judge Strand filed an order directing Urban to show cause as to why he should not be sanctioned. Judge Strand pointed out that Urban had not taken Judge O'Brien's advice and appealed the decision in *Urban III* to the Eighth Circuit Court of Appeals. Judge Strand also noted that Urban had not heeded prior warnings about filing new cases based on his state court conviction.

Urban responded to the show cause order on October 29, 2013. Urban's response convinced Judge Strand that Urban, a *pro se* lay person, failed to understand that he was not allowed to file repetitive lawsuits based on the same events. As a result, Judge Strand recommended that *Urban V* be dismissed with prejudice, but with no further sanction.[4] Judge Strand further recommended that Urban "should be very clearly and directly warned that he will be fined a significant amount (in my view, $1000 would be the starting point) if he attempts to file yet another case in this court that seeks relief based on his state court "trapping" conviction." *Urban V*, Report and Recommendation at 3. On March 18, 2014, Judge O'Brien accepted Judge Strand's Report and Recommendation and dismissed *Urban* V, pointing out:

> There is nothing new to be said about Mr. Urban's case that has not previously been said. Based on the principals of res judicata, Mr. Urban's 'trapping' claims are barred. If Mr. Urban is upset about this outcome, he should file an appeal with the 8th Circuit Court of Appeals. No amount of restyling or rewriting or refiling his Complaint will allow the 'trapping' claims to survive summary dismissal. This Court, Magistrate Strand and Magistrate Zoss have each tried to make that point clear to Mr. Urban.

*Urban V,* Order On Report and Recommendation at 11. Urban did not appeal the dismissal of *Urban V*.

---

[4]Judge Stand recommended that Urban forfeit his filing fee as an appropriate sanction.

### F.     Urban's Current Lawsuit

On March 19, 2014, the day after *Urban V* was dismissed, Urban sought to file the present lawsuit.  In the complaint, Urban again names Sells, Morrow, Oetken, Raymond, Oyadare, Vogel, Beeghly, Vaitheswaran, and Scott as defendants.  Urban also names two new defendants: Judge O'Brien and Iowa District Associate Judge Robert J. Dull.  The complaint repeats the now familiar description of those events in 2006 and 2007 relating to Urban's state court prosecution and conviction for unlawful possession of animal furs.  Judge Robert J. Dull is alleged to have issued a search warrant that was executed on Urban's residence in January 2007.  Judge O'Brien is alleged to have acted without jurisdiction and in violation of his oath of office in dismissing Urban's prior federal lawsuits.  The gist of Urban's latest complaint is that his constitutional rights were violated by an unlawful search and seizure of his residence in January 2007, and that his state court prosecution and conviction violated the double jeopardy clause of the Fifth Amendment.

After conducting an initial review of the complaint, Judge Strand issued a Report and Recommendation in which he concluded that Urban's claims against defendants are barred by res judicata.  Judge Strand also concluded that, even if Urban's claims against Raymond and Oetken are not barred by res judicata, they are barred by the doctrine of prosecutorial immunity.  Judge Strand further found that, even if Urban's claims against Judges O'Brien, Dull, Vogel, Beeghly, Vaitheswaran, and Scott are not barred by res judicata, they are barred under judicial immunity.  Judge Strand went on to reason that if Urban is again claiming that his state court conviction was illegal, the *Rooker-Feldman* doctrine bars this court's subject matter jurisdiction.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  In addition, Judge Strand determined that to the extent Urban is seeking to sue

a state employee in his or her official capacity, his claims are barred by the Eleventh Amendment. Judge Strand also found, with the exception of Urban's claim against Judge O'Brien, that Urban's claims were untimely and barred under Iowa's statute of limitations. Finally, Judge Strand concluded that, even if Urban's claims survive application of the doctrines described above, they fail under Federal Rule of Civil Procedure 12(b)(6) because the complaint fails to plead facts which state a cognizable legal claim against any defendant. Thus, Judge Strand recommended that the complaint be dismissed. Judge Strand further recommended that Urban be sanctioned $1,000 for continuing to file repetitive, frivolous lawsuits based on his prior state court prosecution and conviction after being explicitly warned that he would face sanctions if he did so again. In response to Judge Strand's Report and Recommendation, Urban filed a document entitled "Show Cause Pleading Appeal," which I construe to be Urban's objections to Judge Strand's Report and Recommendation.[5]

## II. LEGAL ANALYSIS

### A. Review Of A Report And Recommendation

Before considering whether or not to accept Judge Strand's Report and Recommendation, I will first set out my standard of review. The applicable statute provides for *de novo* review by the district judge of a magistrate judge's report and recommendation, when objections are made, as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the

---

[5] On May 9, 2014, Urban filed a supplement in which he points out that he brings his claims under 42 U.S.C. § 1983.

> findings or recommendations made by the magistrate judge.
> The judge may also receive further evidence or recommit the
> matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* FED. R. CIV. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). Thus, "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask." *Thomas v. Arn*, 474 U.S. 140, 154 (1985). The United States Supreme Court has explained that, although the statute provides for review when objections are made, the statutory standard does not preclude review by the district court in other circumstances:

> [W]hile the statute does not require the judge to review an
> issue de novo if no objections are filed, it does not preclude
> further review by the district judge, sua sponte or at the
> request of a party, under a de novo or any other standard.

*Thomas*, 474 U.S. at 154. Thus, the specific standard of review may depend upon whether or not a party has objected to portions of the report and recommendation. I will explain what triggers each specific standard of review in a little more detail.

If a party files an objection to a magistrate judge's report and recommendation, the district court must "make a de novo determination *of those portions of the report or specified proposed findings or recommendations to which objection is made*." 28 U.S.C. § 636(b)(1) (emphasis added). In most cases, to trigger *de novo* review, "objections must be timely and specific." *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990). However, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general *pro se* objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and has also been willing to conclude that general objections require "full de novo review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a

de novo review would still have been appropriate given such a concise record.").

When objections have been made, and the magistrate judge's report is based upon an evidentiary hearing, "'the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing.'" *United States v. Azure*, 539 F.3d 904, 910 (8th Cir. 2008) (quoting *Jones v. Pillow*, 47 F.3d 251, 252 (8th Cir. 1995), in turn quoting *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989)). Judge Strand did not hold an evidentiary hearing on the motion, nor did he consider oral arguments on the motion. Instead, he considered only the parties' written submissions, and I have done the same.

In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150; *see also Peretz v. United States*, 501 U.S. 923, 939 (1991) (stating that § 636(b)(1) "provide[s] for de novo review *only* when a party objected to the magistrate's findings or recommendations" (emphasis added)); *United States v. Ewing*, 632 F.3d 412, 415 (8th Cir. 2011) ("By failing to file objections, Ewing waived his right to de novo review [of a magistrate judge's report and recommendation on a suppression motion] by the district court."). Indeed, *Thomas* suggests that no review at all is required. *Id*. ("We are therefore not persuaded that [§ 636(b)(1)] requires some lesser review by the district court when no objections are filed.").

Nevertheless, a district court may also review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id*. at 154. This discretion to conduct *de novo* review of any issue at any time makes sense, because the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). Also, the Eighth Circuit Court of Appeals has indicated that, at a minimum, a district court should review the portions of a

magistrate judge's report and recommendation to which no objections have been made under a "clearly erroneous" standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that, when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting that the advisory committee's note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"). Review for clear error, even when no objection has been made, is also consistent with "retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk*, 15 F.3d at 815.

Although neither the Supreme Court nor the Eighth Circuit Court of Appeals has explained precisely what "clear error" review means in this context, in other contexts, the Supreme Court has stated that the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

I will review Judge Strand's Report and Recommendation with these standards in mind.

## B. *Urban's Objections*

Urban's objections are a mishmash of illogic and legal naiveté. For example, Urban contends that the facts in his current complaint have never been "disputed" in prior lawsuits, and, therefore, summary judgment is inappropriate in this case. There are no motions for summary judgment pending in this case and Judge Strand made no recommendation concerning summary judgment in his Report and Recommendation.

Thus, Urban's objection is overruled. Similarly, Urban objects to those parts of Judge Strand's analysis concerning application of the statute of limitations, res judicata, and the *Rooker-Feldman* doctrine on the ground that those statutes and doctrines are inapplicable because the judgments in his prior lawsuits and the state court prosecution are "void." The flaw in Urban's argument is that none of the prior judgments against him in this court, nor his state court prosecution, have been voided. Accordingly, this objection is also overruled.

Urban also objects to that part of Judge Strand's analysis concerning application of res judicata on the ground that it is inapplicable because he has never had a civil trial in his prior cases.[6] Under Iowa law, one requirement for the application of res judicata is that the first suit resulted in a final judgment on the merits. *See Pavone v. Kirke*, 807 N.W.2d 828, 835 (Iowa 2011); *Spiker v. Spiker*, 708 N.W.2d 347, 353 (Iowa 2006). "It is well-established that a Rule 12(b)(6) dismissal is a 'judgment on the merits' for res judicata purposes unless the plaintiff is granted leave to amend or the dismissal is reversed on appeal." *United States v. Maull*, 855 F.2d 514, 517 n.3 (8th Cir. 1988); *see Federated Dep't Stores v. Moitie*, 452 U.S. 394, 399 n.3 (1981); *Hillary v. Trans World Airlines, Inc.*, 123 F.3d 1041, 1044 & n. 2 (8th Cir.1997); *Carter v. Money Tree Co.*, 532 F.2d 113, 115 (8th Cir. 1976). Because *Urban I, Urban II* and *Urban III* were all Rule

---

[6]Ordinarily, courts "look to state law" in determining whether to apply res judicata. *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 758 (8th Cir. 2003). The term "res judicata" includes both issue and claim preclusion. *See Pavone v. Kirke*, 807 N.W.2d 828, 835 (Iowa 2011); *Plough v. West Des Moines Community Sch. Dist.*, 70 F.3d 512, 515 (8th Cir. 1995). Issue preclusion, or collateral estoppel is a doctrine that bars relitigation of an issue identical to the issue actually litigated in the previous action. *Popp Telcom v. American Sharecom, Inc.*, 210 F.3d 928, 939 (8th Cir. 2000). Claim preclusion bars litigation of claims that were litigated, or could have been litigated, in the previous action. *Id*. at 940 n.13.

12(b)(6) dismissals with prejudice, each was a final judgment on the merits for purposes of res judicata. Accordingly, Urban's objection is overruled.

Urban also objects to those parts of Judge Strand's Report and Recommendation concerning application of the doctrine of prosecutorial immunity, judicial immunity, and Eleventh Amendment immunity on the grounds that those doctrines are inapplicable because defendants were each acting "in a manner violative of the Federal Constitution" and thus are stripped of their "official or representative character and is subjected in his person to consequences of his individual conduct." Urban's Objections at 11 (quoting *Scheuer v. Rhodes*, 416 U.S. 232 (1974)).

Urban's reliance on *Scheuer v. Rhodes*, 416 U.S. 232 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982), is misplaced. In *Scheuer*, the United States Supreme Court addressed plaintiffs' claims for damages brought under § 1983 against the Governor of Ohio, the Adjutant General and his assistant, various named and unnamed officers and enlisted members of the Ohio National Guard, and the president of Kent State University. *Id.* at 234. Plaintiffs alleged these defendants "intentionally, recklessly, willfully, and wantonly caused an unnecessary deployment of the Ohio National Guard on the Kent State campus and, in the same manner, ordered the Guard members to perform allegedly illegal actions which resulted in the death of plaintiffs' decedents." *Id.* at 235. In so doing, plaintiffs claimed that each defendant "acted either outside the scope of his respective office or, if within the scope, acted in an arbitrary manner, grossly abusing the lawful powers of his office." *Id.*

The Court held that plaintiffs' claims were not barred by the Eleventh Amendment because they sought to impose individual and personal liability on the defendants for an alleged deprivation of federal rights under the color of state law. *Id.* at 238. The Court stated that "[w]hile it is clear that the doctrine of *Ex Parte Young* is of no aid to a plaintiff seeking damages from the public treasury, damages against individual defendants are a

21

permissible remedy in some circumstances notwithstanding the fact that they hold public office." *Id*. (citations omitted). As Judge Strand's recommendation, regarding Eleventh Amendment immunity, concerned only Urban's claims against state defendants in their official capacities, the decision of the Supreme Court in *Scheuer* regarding Eleventh Amendment immunity—that in certain instances a state official may be held liable in his personal capacity for damages—is clearly inapplicable here. Urban's objection is therefore overruled.

The *Scheuer* case involved state sovereign immunity and official immunity, not judicial or prosecutorial immunity. The defendants in *Scheuer* were not judges or prosecutors. The *Scheuer* case, therefore, is inapplicable on the issues of judicial and prosecutorial immunity. In decisions after *Scheuer,* the Supreme Court has continued to recognize that the especially sensitive duties of judges and prosecutors require the continued recognition of absolute immunity for those positions. *See Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976) (state prosecutors possess absolute immunity with respect to the initiation and pursuit of prosecutions); *Stump v. Sparkman*, 435 U.S. 349, 364 (1978) (state judge possesses absolute immunity for all judicial acts). In deciding whether to accord a prosecutor immunity from a civil suit for damages, a court must determine whether a prosecutor has performed a quasi-judicial function. *Imbler*, 424 U.S. at 430. If the action was part of the judicial process, the prosecutor is entitled to the protection of absolute immunity. *Id*. at 431 (absolute immunity for initiating a prosecution). Here, the challenged actions of Oetken and Raymond were all taken as part of the judicial process. Accordingly, Urban's claims against them are barred by prosecutorial immunity and Urban's objection to that part of Judge Strand's Report and Recommendation is overruled.

In *Stump*, the Court developed a two-part test for determining whether a judge is entitled to absolute immunity from damage claims. *See Stump*, 435 U.S. at 360. First,

"[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id*. at 356–57) (quoting *Bradley*, 80 U.S. at 351). Second, a judge is immune only for actions performed in his judicial capacity. *Id*. at 360–63. Thus, the Court distinguishes between judicial acts that are in "excess of . . . authority" and acts that are in "clear absence of all jurisdiction," noting:

> "Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend."

*Stump*, 435 U.S. at 356 n.6 (quoting *Bradley v. Fisher*, 80 U.S. 335, 351-52 (1872)). Judicial acts are those involving the "'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993) (quoting *Burns v. Reed*, 500 U.S. 478, 499–500 (1991) (Scalia, J., concurring in judgment in part and dissenting in part)); *Stump*, 435 U.S. at 360–62 ("[T]he factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, i.e., whether it is a function usually performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity."). While subject matter jurisdiction may be narrowly construed for other purposes, when the issue is judicial immunity, it is to be broadly construed. *Duty v. City of Springdale, Arkansas*, 42 F.3d 460, 461 (8th Cir. 1994). Conversely,

exceptions to judicial immunity are to be narrowly construed. *Adams v. McIlhany*, 764 F.2d 294, 298 (5th Cir. 1985).

Urban alleges that Judges Vogel, Beeghly, Vaitheswaran, Dull, and Scott violated his rights by the decisions they made as judges in connection with the underlying state case, and that Judge O'Brien violated his rights by his decisions in Urban's prior federal cases. Thus, all of the judges' actions at issue were taken within their judicial capacity and their conduct does not clearly fall outside their subject matter jurisdiction. Accordingly, I find that Judges O'Brien, Vogel, Beeghly, Vaitheswaran, Dull, and Scott are entitled to judicial immunity for their actions. Urban's objections are overruled.

## C.     *Appropriate sanctions*

Urban does not specifically object to Judge Strand's recommendation that Urban be sanctioned $1,000, pursuant to Federal Rule of Civil Procedure 11(c), for his repeated filing of frivolous, repetitive, baseless, abusive, and defamatory lawsuits. I have reviewed that portion of Judge Strand's Report and Recommendation and find no reason to reject Judge Strand's recommended sanction.

A district court possess inherent authority to take action to prevent abuse of the judicial system. *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 43-45 (1991); *accord Salmeron v. Enterprise Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009); *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002); *Greiner v. City of Champlin*, 152 F.3d 787, 789 (8th Cir. 1998); *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993); *Gillette Foods Inc. v. Bayernwald–Fruchteverwertung, GmbH*, 977 F.2d 809, 813–14 (3d Cir. 1992). I also note that Federal Rule of Civil Procedure 11 authorizes a district court to impose sanctions on attorneys and parties who bring repeated frivolous lawsuits. *See Yan Zhang v. Equity Props. Trust*, 313 Fed. App'x 926, 927 (8th Cir. 2009); *Stilley v. James*, 48 Fed. App'x 595, 597 (8th Cir. 2002).

Rule 11 does not displace a court's inherent power to impose sanctions for bad faith conduct. *Chambers*, 501 U.S. at 46. Indeed, this "[inherent] power is both broader and narrower than other means of imposing sanctions." *Id*. It is broader in that it "extends to a full range of litigation abuses." *Id*. It is narrower in that "a court's inherent power to impose attorney's fees as a sanction" is effectively limited to "cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders," as distinguished from "conduct which merely fails to meet a reasonableness standard." Id. at 47. "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, . . . the Rules are [not] up to the task, the court may safely rely on its inherent power." *Chambers*, 501 U.S. at 50. Here, I find that Urban's conduct can be adequately sanctioned under Rule 11.

Judge Strand carefully reviewed Urban's five prior lawsuits before concluding that Urban's current case was frivolous under Rule 11. "[O]ne acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988). As noted, this is the sixth lawsuit that Urban has filed against a host of defendants, including state and federal judges. Each case has been dismissed as frivolous. At this point, Urban shows no signs that he is willing to abate his practice of filing frivolous, repetitive, baseless, abusive, and defamatory lawsuits in this court despite the prior efforts of Judges O'Brien, Zoss, and Strand to deter him from such filings. My issuing yet another warning to Urban clearly would be of no benefit since he has been unwilling to comply with prior warnings.

I agree with Judge Strand that monetary sanctions against Urban in the amount of $1,000 are appropriate. *See Kucera v. Inbody*, 210 F .3d 379, 2000 WL 489570, at

*1 (8th Cir. Apr. 26, 2000) (unpublished table decision) (affirming $1000 sanction against plaintiff after the fourth in a series of frivolous lawsuits). I find that the amount of this sanction is limited to what is necessary to deter Urban from further sanctionable conduct. *See* FED. R. CIV. P. 11(c)(4) (providing that "[a] sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.").

To make the imposition of fines meaningful, courts may require payment of fines as a condition to filing a new action. *See Yan Zhang*, 313 Fed. App'x at 927 (affirming Rule 11 sanction enjoining plaintiff from commencing any further litigation against defendant unless he was represented by a licensed attorney and demonstrated he had paid previously imposed sanctions); *see also McDonald v. Cooper*, 471 F. App'x 494 (6th Cir. 2012) (holding that district court did not abuse its discretion in barring plaintiff from filing future civil cases until he paid a $1,000 sanction); *Stewart v. Fleet Financial*, 229 F.3d 1154 (6th Cir. 2000) (affirming requirement that pro se litigator file $25,000 bond prior to filing suit). Courts have also restricted vexatious litigants from filing further actions without first obtaining leave of the court. *See Malcom v. Board of Educ. of Honeoye Fall-Lima Cent. Sch. Dist.*, 506 Fed App'x 65, 70 (2nd Cir. 2012); *Thandedar v. Time Warner, Inc.*, 352 Fed. App'x 891, 901 (5th Cir. 2009); *In re Peterson*, 338 Fed. App'x 763, 764 (10th Cir. 2009); *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007); *Kokoski v. Pauer,* 241 Fed. App'x 75, 76 (4th Cir. 2007); *Tilbury v. Aames Home Loan,* 199 Fed. App'x 122, 127 (3rd Cir. 2006); *Marbly v. Wheatley*, 87 Fed. App'x 535, 536 (6th Cir. 2004).

I find that similar sanctions are appropriate in this case to deter Urban from filing future vexatious and frivolous lawsuits in this court. I therefore prohibit Urban from filing any further lawsuits in this court unless he first pays the entire $1,000 sanction.

He must then obtain leave to file any further lawsuit by filing a motion for leave to file a new lawsuit and attach a copy of his proposed complaint.

## III. CONCLUSION

For the reasons discussed above, I accept Judge Strand's Report and Recommendation and dismiss Urban's complaint with prejudice. I also order that Urban pay $1,000 as a sanction for his filing this vexatious and frivolous lawsuit. I further order that Urban is prohibited from filing any further lawsuits in this court unless he first pays the entire $1,000 sanction. He must then obtain leave to file any further lawsuit by filing a motion for leave to file a new lawsuit and attach a copy of his proposed complaint.

**IT IS SO ORDERED**.

**DATED** this 1st day of August, 2014.

Mark W. Bennett
_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA